### 10363

#### KAMINER *ET AL.* v. KAIGLER *ET AL.*
##### (102 S. E. 20.)

1. WORK AND LABOR—RELATIONSHIP OF PARENT AND DAUGHTER-IN-LAW DOES NOT RAISE PRESUMPTION OF NO COMPENSATION INTENDED FOR SERVICES.—Where an aged woman, of small means and with little help, took care of her daughter-in-law, a minor, who had been practically abandoned by her husband, the woman's relationship to her son's wife was not such by itself as to rebut the general implication that the service which was rendered the son's wife was to be compensated.

2. WORK AND LABOR—SERVICES INTENDED AS CHARITY MAY NOT BE CONVERTED INTO A CHARGE.—If a mother undertook service to her son's wife, with no expectation of compensation, but as a gratuity, her intended charity may not afterwards be converted into a charge.

3. WORK AND LABOR—IMPLIED PROMISE OF COMPENSATION MAY NOT BE ESTABLISHED BY LOOSE AND INCONCLUSIVE EVIDENCE.—An implied promise of a wife to compensate her husband's mother for her support and services rendered may not be established by loose and inconclusive testimony.

4. GUARDIAN AND WARD—HUSBAND AS GUARDIAN OF WIFE MAY NOT DISBURSE FUNDS WITHOUT LEAVE OF COURT.—A trustee husband may not take the whole of a small fund into his hands, and pay it out for the maintenance of his ward wife, without leave of a Court.

Before BOWMAN, J., Calhoun, Summer term, 1918. Reversed and remanded with directions.

Suit by J. A. Kaminer and others against L. E. Kaigler and others. Decree for plaintiffs, reducing the amount of their claims, and they appeal.

*Mr. W. A. Isgett,* for appellant, submits: *What was originally, and at the beginning a gratuity cannot afterwards be converted into a debt:* 38 S. C. 158; Bail. Eq. 388. *It must be shown conclusively that the deceased intended to and did assume a legal obligation to the claimant and of such a character that it would be legally enforced against him:* 34 S. C. 255; Am. & Eng. Enc. L. 337, and notes; 2 Bay 101; 3 Strob. 321; 2 Bailey 308; 3 Min. 645; 96 N. C. 149; Am. & Eng. Ency. —.

*Mr. J. G. Stabler,* for the respondent-defendant, Mrs. Elizabeth Kaigler, submits: *Where the guardian makes expenditures for the actual wants and necessaries of the ward, the Court will allow such expenditures:* 21 Cyc. 69, and cases cited in notes. *Where the ward and her husband continue to live with the guardian, it will be presumed that their board should be charged to the wife's property, and the guardian will be allowed a credit for the amount on the subsequent settlement of his accounts in equity, although the husband is insolvent:* 21 Cyc. 70, and cases cited in notes. *As a general rule to render a guardian liable for necessaries furnished ward, there must be a contract, express or implied, as between him and the party furnishing the necessaries, and there was such a contract here, but no contract need exist or be made under certain circumstances, as extreme necessity, founded on the guardian's neglect:* 21 Cyc., and cases cited in notes. *In cases of extreme necessity not only the income, but the principal of the ward's estate may be used for the maintenance and support of the ward:* 15 Am. & Eng. Ency. of Law, p. 100, with cases cited in notes; 31 S. C. 604. *The burden is on appellant in chancery cases to show that the preponderance of the evidence is against the concurrent findings of the referee and trial Judge:* 100 S. C. 59. *Findings of fact concurred in by master and Circuit Judge:* 62 S. C. 546.

January 27, 1920.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The issue of law involves the efficacy of payments made by a guardian for his ward. The Circuit Court allowed the payments, and the representatives of the ward have appealed.

The circumstances out of which the controversy was born are these: A young woman named Isolette Kaminer, while yet a minor, married in July, 1912, a young man named L.

E. Kaigler. She died in August, 1914, not having reached her majority. In January, 1914, Isolette fell heir to $696, and her husband immediately qualified as her guardian, with his mother and brother as his sureties, and received the said sum of money. He gave no account of his trusteeship, was a worthless fellow from all accounts, and is now gone to parts unknown.

Isolette's father and sister and Isolette's aunt have demanded of the sureties on the husband's bond an accounting for the said sum of money. The Court allowed the plaintiffs' demand, reduced, however, by $510, constituted of these items:

Maintenance of Isolette by Mrs. Kaigler, 18 months.$320.00
Maintenance of Isolette by Mrs. Kaminer, 5 months.   80.00
Personal service, Mrs. Kaigler to Isolette........   30.00
For sum paid by Mrs. Kaigler for Isolette........   20.00
Funeral expenses of Isolette....:..............   60.00

                                                 $510.00

Judgment was awarded for the balance of $186.39, and five years' interest upon that sum.

The two exceptions (1) challenge the effectiveness of the aforesaid payment to acquit the liability of the bondsmen; and (2) deny that there was proven any express contract, as it is contended was necessary, by Isolette or her guardian to make the payments.

The rule laid down in *Ex parte Aycock,* 34 S. C. 257, 13 S. E. 450, is this: "Where there is a legal or moral obligation on the part of one to render service to another, no such promise (to pay for the service) can be implied from the mere rendition and acceptance of such service."

There was no legal obligation on Mrs. Kaigler to maintain her adult son and his wife, one or both. The legal obligation was on the son to maintain his wife. The inter-

esting inquiry is: Was there resting on Mrs. Kaigler such a moral obligation to maintain Isolette as to raise the presumption that she did so gratuitously?

"The standard of moral duty is to be found in the books of law rather than in those on moral science." Bishop on Contracts, sec. 94.

In some sense there is a moral obligation on all men to render assistance to a stranger even, and that without hope of recompense; the Good Samaritan was moved to act by the force of that obligation. But moral obligation, when put into action, assumed the character of an implied contract on the part of him who receives the benefit, "whenever such assumed promise is necessary as a foundation on which to enforce so much of natural justice as comes within judicial cognizance." Same authority.

Reference, therefore, must be had in every such case to all the circumstances of it, to find out if the natural justice of the cause brings it within our cognizance. In the instant case the testimony is very meager in essential matter; but we infer from the case and the argument that Mrs. Kaigler was well up in years, a woman of small means and little help; that her son, the husband, was a worthless fellow, who practically abandoned his wife and thust her upon his mother to maintain. If so much be true, and if Isolette had means to pay for her support, and if all the circumstances show that so much was anticipated by the parties, then Mrs. Kaigler ought to be compensated.

Judge O'Neall expressed the opinion that a plaintiff, who maintained his wife's mother, did not bear to her so close a relationship as of itself to negative the legal implication of the liability of the woman's husband to the plaintiff for her maintenance. *Trammel v. Salmon,* 2 Bailey 310. So here Mrs. Kaigler's relationship to her son's wife was not such by itself as to rebut the general implication of law that the service which Mrs. Kaigler rendered was to be compensated.

15—S. C. 113

As suggested by the learned Judge, the case may be altered by other attendant circumstances. See, also, 40 Cyc. 2821.

Of course, if Mrs. Kaigler undertook the service to Isolette with no expectation of compensation and as a gratuity it is well established that what was originally intended for a charity may not afterwards be converted into a charge. That question must also be determined by the testimony elicited on the new trial.

But, granting that testimony may show a case where Mrs. Kaigler ought to be conpensated, yet the record which is before us, and upon which the Circuit Court acted, does not make such a case. As said by Dunklin, Chancellor, "the testimony is loose, and inconclusive." *Prince v. Logan,* Speer's Eq. 34.

It is axiomatic that a trustee husband may not take the whole of a small fund into his hands, and pay it out for the maintenance of his ward wife, without any sort of leave of a Court to do so. It is, nevertheless, true that in exceptional cases a Court may condone such conduct, if in the first instance it would, on application to it, have permitted the expenditure. The testimony before us, however, does not make such a case. See *Holmes v. Logan,* 3 Strob. Eq. 33; *Prince v. Logan,* Speer's Eq. 33; *McDowell v. Caldwell,* 2 McCord Eq. 55, 16 Am. Dec. 635; *Wright v. Wright,* 2 McCord Eq. 199; *Houseal v. Gibbes,* Bailey Eq. 486, 23 Am. Dec. 186.

The decree below is reversed, and the cause is remanded for trial pursuant to the rules we have indicatel; and in that trial let all the items of disbursements be inquired into.